IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVSION

| | |
|---|---|
| DENSO CORPORATION, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| QORVO, INC. ) | **CIVIL ACTION NO. 5:25-cv-00176** |
| ) | |
| ) | |
| *Defendant*. ) | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff DENSO Corporation ("DENSO" or "Plaintiff"), in its Complaint for patent infringement against Defendant Qorvo, Inc. ("Qorvo" or "Defendant"), hereby alleges as follows:

**NATURE OF THE ACTION**

1. This is a civil action for the infringement of United States Patent No. 7,758,979 B2 ("the '979 Patent" or the "Patent-in-Suit") under the Patent Laws of the United States, 35 U.S.C. § 1 et seq.

**THE PARTIES**

**DENSO Corporation**

2. Plaintiff DENSO Corporation is a Japanese corporation having its primary place of business at 1-1, Showa-cho, Kariya, Aichi, 448-8661, Japan.

3. DENSO is an innovative, global manufacturing company. The company was founded in 1949 and is headquartered in the city of Kariya, Aichi Prefecture, Japan. The name DENSO is formed from the Japanese words for "electricity" (*denki*) and "device" (*sochi*).

4. Now listed on the Global Fortune 500, DENSO manufactures and sells an array of automotive components, as well as industrial systems, consumer products, and other electronics. In recent years, DENSO has also focused on the semiconductor sector.

5. DENSO is the owner of all rights, title, and interest in the Patent-in-Suit.

**Qorvo**

6. Defendant Qorvo, Inc. ("Qorvo") is a Delaware corporation with an established place of business within this District at 500 W. Renner Road, Richardson, Texas 75080. Defendant is authorized to do business in Texas. Defendant may be served by serving its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

7. Qorvo conducts business operations within the Eastern District of Texas where it sells, develops, and/or markets its products including its facilities at 500 W. Renner Road, Richardson, Texas 75080.

8. Qorvo describes itself as a leading global provider of connectivity and power solutions. Its semiconductor products are used in market segments that include consumer electronics, smart home/IoT, automotive, EVs, battery-powered appliances, network infrastructure, healthcare, and aerospace/defense.

9. Among its products, Qorvo supplies electronic components – such as filters and integrated front-end modules – for mobile devices.

**JURISDICTION AND VENUE**

10. This is an action for patent infringement arising under the patent laws of the United States. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). Plaintiff also invokes the Court's supplemental jurisdiction pursuant to 28 U.S.C § 1367(a) with respect to COUNT II below.

11. This Court has personal jurisdiction over Qorvo in this action because Qorvo has committed acts within the Eastern District of Texas giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Qorvo would not offend traditional notions of fair play and substantial justice. Defendant Qorvo, directly and/or through subsidiaries or intermediaries (including distributors, retailers, and others), has committed and continues to commit acts of infringement in this District by, among other things, offering to sell and selling products and/or services that infringe the patents-in-suit. Moreover, Qorvo is registered to do business in the State of Texas, has offices and facilities in the State of Texas, and actively directs its activities to customers located in the State of Texas.

12. Venue is proper in this district under 28 U.S.C. §§ 1391(b)-(d) and 1400(b). Defendant Qorvo is registered to do business in the State of Texas, has offices in the State of Texas, has transacted business in the Eastern District of Texas and has committed acts of direct and indirect infringement in the Eastern District of Texas.

13. Qorvo has previously accepted venue and asserted that venue was proper in the Eastern District of Texas in connection with other patent infringement litigations with other third parties. *See, e.g.*, *MIMO Research LLC v. Qorvo*, Civil Action No. 5:22:cv-00075-JRG-JBB, Answer and Counterclaims, Docket Item 17.

14. Qorvo has a regular and established place of business in this District and has committed acts of infringement in this District. Qorvo has a permanent office location at 500 W. Renner Road, Richardson, Texas 75080 which is located within this District. Qorvo employs full-time personnel such as sales personnel and engineers in this District, including in Richardson, Texas. Qorvo has also committed acts of infringement in this District by commercializing, marketing, selling, distributing, testing, and servicing certain Accused Products.

15. This Court has personal jurisdiction over Qorvo. Qorvo has conducted and does conduct business within the State of Texas. Qorvo, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), ships, distributes, makes, uses, offers for sale, sells, imports, and/or advertises (including by providing an interactive web page) its products and/or services in the United States and the Eastern District of Texas and/or contributes to and actively induces its customers to ship, distribute, make, use, offer for sale, sell, import, and/or advertise (including the provision of an interactive web page) infringing products and/or services in the United States and the Eastern District of Texas. Qorvo, directly and through subsidiaries or intermediaries (including distributors, retailers, and others), has purposefully and voluntarily placed one or more of its infringing products and/or services, as described below, into the stream of commerce with the expectation that those products will be purchased and used by customers and/or consumers in the Eastern District of Texas. These infringing products and/or services have been and continue to be made, used, sold, offered for sale, purchased, and/or imported by customers and/or consumers in the Eastern District of Texas. Qorvo has committed acts of patent infringement within the Eastern District of Texas. Qorvo interacts with customers in Texas, including through visits to customer sites in Texas. Through these interactions and visits, Qorvo directly infringes the Patent-in-Suit. Qorvo also interacts with customers who sell the Accused Products into Texas, knowing that these customers will sell the Accused Products into Texas, either directly or through intermediaries.

16. Qorvo has minimum contacts with this District such that the maintenance of this action within this District would not offend traditional notions of fair play and substantial justice. Thus, the Court therefore has both general and specific personal jurisdiction over Qorvo.

## FACTUAL BACKGROUND

17. DENSO has a history of involvement in research and development in national projects funded by the Japanese government, including collaborations and initiatives to support technological advancements and innovation.

18. One such innovation was in the area of materials used to fabricate advanced radio-frequency (RF) filters.

19. During the first decade of the 2000s, teams from DENSO and The National Institute of Advanced Industrial Science and Technology (Tokyo, Japan) ("AIST") collaborated on a research product to develop new piezoelectric materials for use in Bulk Acoustic Wave filters.

20. Bulk Acoustic Wave (BAW) filters are compact, relatively low-cost RF filters that can be used in a wide range of applications. BAW filters are widely used in consumer products for mobile communication systems.

21. Piezoelectric materials are materials that convert mechanical pressure to electrical energy and vice versa.

22. BAW filters operate by converting electrical energy into acoustic or mechanical energy on a piezoelectric material. Since they can operate at higher frequencies than other types of filters, BAW filters are widely used for many of the bands associated with 4G and 5G mobile technology.

23. The piezoelectric material that was traditionally used in BAW filters is aluminum nitride (AlN).

24. However, it is difficult for traditional AlN BAW filters to meet the performance requirements of some 5G bands.  This renders AlN BAW filters sub-optimal for use in 5G mobile devices.

25. Today, most of the world's largest economies have implemented commercial 5G networks, and the world's leading smartphone manufacturers have launched multiple generations of 5G-enabled devices.

26. 5G is delivering faster speeds, increased bandwidth and capacity, significantly lower latency, and more reliable and secure wireless connectivity.

27. It is of critical importance for BAW filter devices to meet the performance requirements demanded by 5G. This problem was solved by using a piezoelectric material made up of scandium, aluminum nitride (ScAlN) thin films. This ScAlN thin film allows for lower-power consumption BAW filter components that can be miniaturized, allowing for multiple filters to cover high frequency and wide bands such as 5G. As such, the use of ScAlN thin films enables modules necessary for 5G mobile devices. The importance of the ScAlN has grown as 5G has proliferated.

28. DENSO pioneered the use of ScAlN thin films for BAW filters.

29. The invention of ScAlN thin film technology has been recognized by the industry as a revolutionary technology of critical importance for 5G application.

30. For example, the paper, "*Aluminum scandium nitride thin-film bulk acoustic resonators for 5G wideband applications*," by Zou et al. in Microsystems & Nanoengineering- Nature (2022) recognized that it is challenging for traditional AlN-based BAW filters to meet several of the allocated 5G bands and that this problem can be solved by using ScAlN thin films that exhibit a large mechanical-electrical coupling coefficient and excellent figure of merit (FOM).

31. A Qorvo white paper entitled "*Advanced BAW Filter Technology and Its Impact on 5G*," notes that a key advantage of the new higher-frequency bands allocated for 5G is increased bandwidth, which delivers higher data rates and increases network capacity: "As a result, 5G BAW filters must be able to operate at higher frequencies than previous filter generations; they must also

be able to support those frequencies with much greater bandwidth. Increasing filter bandwidth requires enhanced piezo-electric coupling. The use of Scandium-doped AlN piezo layers has been key to overcoming this problem."

32. The importance of ScAlN piezoelectric layers in increasing electromechanical coupling and in the design of BAW filters that can be used for 5G applications has been repeatedly recognized by the industry. See, e.g., *Super-High-Frequency Bulk Acoustic Resonators Based on Aluminum Scandium Nitride for Wideband Applications*, Dou et al., Nanomaterials; "*A Film Bulk Acoustic Resonator Based on Ferroelectric Aluminum Scandium Nitride Films*," Wang et al., J. Microelectromechanical Syst.; *Scandium Aluminium Nitride-Based Film Bulk Acoustic Resonators*, Schneider et al., Proceedings 2017.

**The Accused Products**

33. Qorvo's products include front-end modules for wireless communications, each of which include a number of BAW filters.

34. Exemplary front-end modules include, but are not limited to, the QM78105 module and the QM76305 module.

35. According to Qorvo, "One of the key factors contributing to the superior performance of Qorvo's filters is their use of Bulk Acoustic Wave (BAW) technology." (https://www.bing.com/ck/a?!&&p=d3a924461da8e3df6edf03af524e62d7c9b66662d0f6c3c3c79cc16bcecd1f34JmltdHM9MTc2MzUxMDQwMA&ptn=3&ver=2&hsh=4&fclid=09c42185-91f5-6c9c-1926-3268907e6d1c&psq=Advanced+BAW+Filter+Technology+and+Its+Impact+on+5G&u=a1aHR0cHM6Ly93d3cucW9ydm8uY29tL3Jlc291cmNlcy9kL3FvcnZvLWFkdmFuY2VkLWJhdy1ma

Wx0ZXItdGVjaG5vbG9neS1pbXBhY3Qtb24tNWctd2hpdGUtcGFwZXI). As indicated in a Qorvo whitepaper:

> Qorvo's BAW RF filters play indispensable roles in wireless devices and infrastructure. They ensure isolation between the ever-growing number of frequency bands and offer low insertion loss to support device performance requirements. However, the global rollout of 5G, and the evolution of other wireless standards such as Wi-Fi, create new filtering challenges that are beyond the capabilities of traditional acoustic filters. Significant advances in BAW technology were required to solve these new challenges.

36. Qorvo's whitepaper specifically links the use of Scandum doped AlN piezoelectric materials to solving the increased bandwidth issue needed for 5G: "The use of Scandium-doped AlN piezo layers has been key to overcoming this problem – however, filter manufacturing becomes more challenging in comparison to regular AlN."

37. Qorvo has shipped BAW filters worldwide.

38. In its exemplary front-end modules, Qorvo uses scandium-doped aluminum nitride (AlN) in its Bulk Acoustic Wave (BAW) filters (i.e., ScAlN) to increase the piezoelectric coupling and allow for wider bandwidths in advanced wireless devices like 5G smartphones.

39. The BAW filters included in Qorvo's exemplary front-end module and in other front-end modules include AlN piezoelectric thin films containing scandium where the content ratio of scandium is in the claimed range of the DENSO Patent-in-Suit. Each such front-end module is an Accused Product.

40. These front-end modules are used in mobile devices such as the Apple iPhone 15 Pro, the Apple iPhone 15 Pro Max, and the Samsung Galaxy S21.

41. For example, testing of the QM76305 module found in the iPhone 15 Pro Max mobile device shows five BAW filters with AlN piezoelectric thin films containing scandium where the content ratio of scandium is in the claimed range of the DENSO Patent-in-Suit, including where the content ratio of scandium is 19.33 atom%, 19.02 atom%, 19.55 atom%, 19.13 atom%, and

26.38 atom%, on an assumption that a total amount of a number of atoms of the scandium and a number of atoms of aluminum in the aluminum nitride thin film is 100 atom %..

**Qorvo and DENSO Were Holding Confidential Licensing Negotiations When Qorvo Prematurely Filed a Declaratory Judgment Action**

42. DENSO and Qorvo have been engaged in patent licensing negotiations relating to DENSO's ScAlN Patent Portfolio, including the Patent-in-Suit.

43. On October 27, 2025, Qorvo filed a Declaratory Judgment Action against DENSO on the '979 Patent and another patent.

44. In the Declaratory Judgment Action, in at least paragraphs 8-19 of its Complaint, Qorvo revealed the substance of the discussions and used confidential information in violation of the parties' Confidentiality Agreement.  The Confidentiality Agreement was not terminated.

45. Thus, the Declaratory Judgment Action should be dismissed.

## THE PATENT-IN-SUIT

46. On July 20, 2010, the US Patent Office issued U.S. Patent No. 7,758,979 ("the '979 Patent" or "the Patent-in-Suit"), entitled "Piezoelectric Thin Film, Piezoelectric Material, and Fabrication Method of Piezoelectric Thin Film and Piezoelectric Material, and Piezoelectric Resonator, Actuator Element, and Physical Sensor Using Piezoelectric Film."  The '979 Patent is valid and enforceable.  A copy of the '979 Patent is attached as Exhibit 1.

47. The original assignees of the '979 Patent were The National Institute of Advanced Industrial Science and Technology (Tokyo, Japan) ("AIST") and DENSO.

48. Presently, DENSO is the owner of all rights, title, and interest in and to the '979 Patent, and holds all substantial rights therein, including the right to grant licenses, to exclude others, and to enforce and recover past damages for infringement of the '979 Patent.

49. The invention disclosed and claimed in the '979 Patent relates to a piezoelectric material and a piezoelectric thin film, in which scandium is added to aluminum nitride. When used as the piezoelectric material in BAW filters, this provides for higher performance BAW filter devices that are more compact and which consume less power. These devices have improved piezoelectric response, while maintaining AlN's favorable thin-film characteristics of elastic wave propagation speed, Q value, and frequency-temperature coefficient.

50. Exemplary Claim 6 of the '979 Patent covers:

> A piezoelectric thin film comprising an aluminum nitride thin [film] containing scandium, a content ratio of the scandium being in a range of 10 atom % to 35 atom % or 40 atom % to 50 atom % on an assumption that a total amount of a number of atoms of the scandium and a number of atoms of aluminum in the aluminum nitride thin film is 100 atom %.

51. The invention of the '979 Patent is widely recognized as a pioneering patent in the field.

52. The first named inventor on the '979 Patent is Mr. Morito Akiyama, who led a joint team from AIST and DENSO in developing the technology disclosed and claimed in the '979 Patent.

53. As noted in "*Piezoelectric Aluminum Scandium Nitride (AlScN) Thin Films Material Development and Applications in Microdevices,*" Micromachines (Ed. Agnė Žukauskaitė): "The enhanced piezoelectric properties of aluminum scandium nitride (Al$_{1-x}$Sc$_x$N or AlScN) were discovered in 2009 by Morito Akiyama's team." This article also notes that "After Akiyama demonstrated the large enhancement of the piezoelectric coefficient by doping AlN with scandium, a growing number of studies have been conducted to exploit AlScN in MEMS, with particular interest in RF applications."

54. As noted in "*In Situ Sychrotron XRD Characterization of Al-ScN Thin Films for MEMs Applications,*" Jiang et al., Materials, "Rare earth element doping...has been proven to be an

effective method to improve the piezoelectric properties of AlN materials. Among them, scandium doping is regarded as the most efficient method since Akiyama, M. demonstrated a ~400% piezoelectric response increase in 2009."

55. On June 12, 2018, on behalf of DENSO and AIST, Mr. Akiyama and the co-inventors of the '979 Patent won the the Japan Insitute of Invention and Innovation's 21st Century Invention Encouragement Award and 21st Century Invention Contribution Award for their invention of High-Pressure Electric Nitride Scandium Aluminum Thin Film, as described in the Japanese counterpart to the '979 Patent.

56. The 21st Century Invention Encouragement Award and the 21st Century Invention Contribution Award are presented to individuals who have made outstanding contributions to the creation and implementation of inventions that have demonstrated significant practical effects or are expected to have a substantial impact in shaping society in the 21st century.

57. In connection with this award, it was stated: "The recipient of this award is the nitride scandium aluminum (ScAlN) thin film piezoelectric material. Conventionally, by adding scandium (Sc) to the aluminum nitride (AlN) film, which is used as a high-frequency filter material in smartphones, the piezoelectric properties have been improved by five times. The filter device composed of this material enables both compatibility with the next-generation standard 5G and low power consumption, and it is already installed in Apple's iPhone X. The award recognizes the material's versatility, namely its simplicity as a ternary system material, and the wide range of potential applications and markets. In fact, there are ongoing licensing agreements or negotiations with multiple domestic and international companies, including applications beyond the mentioned filter."

## COUNT I

*(Qorvo's Infringement of the Patent-in-Suit)*

58. Paragraphs 1 to 57 are hereby incorporated by reference.

59. **Direct Infringement**: Qorvo, without authorization or license from DENSO, has directly infringed, and continues to directly infringe, literally and/or by the doctrine of equivalents, individually and/or jointly, the Patent-in-Suit, by making, utilizing, importing, testing, distributing, selling, and/or offering for sale (from and in the United States) the Accused Products that infringe at least Claim 6 of the Patent-in-Suit literally or by the doctrine of equivalents. Discovery may show additional infringements by inducement to import infringing products to the United States.

60. **Willful Infringement**: Qorvo has had actual knowledge of the Patent-in-Suit since at least as early as November 29, 2023, when DENSO put Qorvo on notice.

61. As of that time and since that time, Qorvo has known that its continued actions would infringe one or more claims of the Patent-in-Suit.

62. Nonetheless, Qorvo continued to make, use, import, sell, and offer to sell the Accused Products without DENSO's authorization.

63. **Damages**: DENSO is entitled to recover damages adequate to compensate for Defendant's infringement of the Patent-in-Suit and will continue to be damaged by such infringement.

64. DENSO is entitled to recover damages from Defendant to compensate it for Defendant's infringement, as alleged above, in an amount measured by no less than a reasonable royalty under 35 U.S.C. § 284, as well as enhanced damages pursuant to 35 U.S.C. § 284.

65. Further, Defendant's infringement of DENSO's rights under the Patent-in-Suit will continue to damage DENSO's business, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by the Court.

66. As a result of Defendants' acts of infringement, Plaintiff has suffered and will continue to suffer damages in an amount to be proven at trial.

## COUNT II

*(Qorvo's Breach of the Non-Disclosure Agreement)*

67. Paragraphs 1 to 66 are hereby incorporated by reference.

68. Qorvo and Denso executed a Non-Disclosure Agreement to cover their confidential licensing discussions and which restricted the use of Confidential Information.

69. This fact was confidential itself but Qorvo breached the NDA by revealing this and other Confidential Information when it filed its Declaratory Judgment Action, attaching and referencing material clearly labeled confidential.

## DEMAND FOR JURY TRIAL

Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A. A judgment that the Patent-in-Suit is valid and enforceable;

B. A judgment that Defendant directly infringes, and/or actively induces infringement of one or more claims of the Patent-in-Suit;

C. A judgment that awards Plaintiff all damages adequate to compensate it for Defendant's infringement and willful infringement of the Patent-in-Suit, including enhanced damages and all pre- judgment and post- judgment interest at the maximum rate permitted by law;

D. A judgment that awards Plaintiff all appropriate damages under 35 U.S.C. § 284 for Defendant's past infringement with respect to the Patents-in-Suit;

E. A judgment that awards Plaintiff all appropriate damages under 35 U.S.C. § 284 for Defendant's continuing or future infringement, up until the date such judgment is entered with respect to the Patent-in-Suit, including ongoing royalties, pre- and post-judgment interest, costs, and disbursements as justified under 35 U.S.C. § 284;

F. A judgment that this case is exceptional under 35 U.S.C. § 285;

G. An accounting of all damages not presented at trial;

H. An injunction against making, using, selling offering to sell, and/or importing all infringing products unless Defendant agrees to a license after a jury verdict; and

I. A judgment that awards Plaintiff its costs, disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by the Court.

Dated: November 26, 2025                    Respectfully submitted,

                                            /s/ Trey Yarbrough
                                            Trey Yarbrough
                                            Bar No. 22133500
                                            trey@yw-lawfirm.com
                                            YARBROUGH WILCOX, PLLC
                                            100 E. Ferguson, Suite 1015
                                            Tyler, Texas 75702
                                            903-595-3111 office
                                            903-595-0191 fax

                                            WIGGIN AND DANA LLP

                                            Joseph M. Casino (*Pro Hac Vice* to be submitted)
                                            Michael J. Kasdan (*Pro Hac Vice* to be submitted)
                                            437 Madison Avenue
                                            New York, NY 10022
                                            Telephone: (212) 551-2842
                                            Email: jcasino@wiggin.com
                                            Email: mkasdan@wiggin.com

                                            ATTORNEYS FOR PLAINTIFF DENSO CORPORATION